IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sterling R. Elliott,

        Plaintiff,

    v.

Plaza Properties, Inc.,
et al.,

        Defendants.

Case No. 2:08cv1037

Judge Michael H. Watson

## OPINION AND ORDER

This case is currently before the Court to consider a motion to dismiss the complaint, filed pursuant to Fed.R.Civ.P. 12(b)(1) and (6), by defendants Plaza Properties, Inc., Bernard R. Ruben, Lawrence Ruben, Tracie Winegardner, Mindy Basinger, Vicki Mangus, and Jesse Crabtree.  Plaintiff Sterling R. Elliott has responded to that motion, and has also filed a number of other motions, including a motion to reconsider a ruling made by the Magistrate Judge and a motion to recuse the undersigned District Judge.  For the following reasons, Mr. Elliott's various motions will be denied, and the motion to dismiss will be granted.

I.

Because the motion for recusal questions the propriety of the issuance of any rulings in this case by the undersigned District Judge, that motion will be addressed first.

Recusal of judges of the United States is governed by statute.  One such statute, 28 U.S.C. §144, provides that

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

This statute is "heavily weighted in favor of recusal." See Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 353 (6th Cir. April 3, 2007), citing Hoffman v. Caterpillar, Inc., 368 F.3d 709, 718 (7th Cir. 2004). As a result, its procedural provisions, including the timeliness of the motion and the certificate of counsel of record, are strictly enforced. Further, an affidavit submitted in support of a §144 motion for recusal "must state factual averments with particularity as to time, person, place, and circumstances," and the Court "'may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient.'" See id., quoting Hoffman, supra.

28 U.S.C. §455 provides an alternate statutory basis for recusal. It does not have the strict procedural requirements which govern a motion filed under §144. Section 455 addresses generally issues of financial conflict of interest and the appearance of partiality, stating in particular that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). Because the strict

procedural requirements of §144 do not apply to a recusal motion made under this

statutory provision, the Court is not bound by any facts supplied by the movant, but is

free to "make credibility determinations, assign to the evidence what he believes to be

its proper weight, and to contradict the evidence with facts drawn from his personal

knowledge." United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985).

Nevertheless, because "'[t]he goal of section 455(a) is to avoid even the appearance of

partiality . . . recusal is required . . . if a reasonable person, knowing all the

circumstances, would expect that the judge would have actual knowledge'" of "'facts

indicating his interest or bias in a case . . . .'" Liljeberg v. Health Services Acquisition

Corp., 486 U.S. 847, 860-61 (1988), quoting Health Services Acquisition Corp. v.

Liljeberg, 796 F.2d 796, 802 (5th Cir. 1986), aff'd 486 U.S. 847 (1988).

Mr. Elliott's motion for recusal is plainly insufficient under either of these statutes.

It reads in full as follows: "I Sterling R Elliott motion the United States Court to recuse

Judge Watson in Case No 208 cv 1037 because of prejudice."  Motion the United

States District to Recuse Judge Watson, Doc. #62.  No affidavit has been filed, nor has

Mr. Elliott provided any factual basis for his claim of prejudice.  The undersigned is not

aware of any facts which might be grounds for disqualification under either 28 U.S.C.

§144 or 28 U.S.C. §455, nor any facts which might lead a reasonable person to

conclude that this Judge cannot fairly decide the issues in the case.  The Court knows

nothing about either Mr. Elliott or this case apart from what appears on the record of the

case itself, and it is clear that the type of bias which requires recusal must come "from

some source other than participation in the proceedings" and must be "personal, or

extrajudicial" in its nature and origin. Wheeler v. Southland Corp., 875 F.2d 1246, 1251

(6th Cir. 1989).  Consequently, Mr. Elliott's motion for recusal is entirely without merit and provides no basis for the Court not to proceed to decide the remaining pending motions.

II.

Mr. Elliott's current claims appear in the amended complaint which he filed on November 12, 2008.  They can be fairly summarized as follows.

In October 2007, Mr. Elliott was living at an apartment complex operated by defendant Plaza Properties and located on Wilson Road on the west side of Columbus, Ohio.  The name of the complex is Wilson Plaza.  On October 9, 2007, Plaza Properties sent Mr. Elliott a letter requesting that he vacate his apartment by December 31, 2007.  He did vacate the apartment shortly after that date after Plaza Properties threatened to file a formal eviction action against him.  However, he was granted a few extra days to leave because he was having trouble finding a new apartment.

The genesis of the dispute between Mr. Elliott and Plaza Properties appears to be an incident that took place in early October 2007.  On the day in question, Mr. Elliott had a run-in with another Wilson Plaza tenant, William Galentine.  According to a letter which Mr. Galentine wrote to Plaza Properties' manager, Mindy Basinger, Mr. Galentine saw Mr. Elliott with a Kroger grocery cart inside the apartment building.  Mr. Galentine told Mr. Elliott that such carts were not permitted in the building.  In response, Mr. Elliott cursed at Mr. Galentine and also made "sexual slanders."  Mr. Galentine's letter expressed concern about the grocery cart situation in general, observing that Kroger had not given residents permission to take these carts, that they were being abandoned behind the dumpster, and that their use in the building created a risk of

injury.  However, the letter also recited that while Mr. Galentine was complaining about Mr. Elliott to the resident manager, Mr. Elliott came in and threatened Mr. Galentine. Mr. Elliott attached a copy of this letter to his complaint.  It is dated October 8, 2007, and the eviction letter was sent the next day.

Mr. Elliott alleges that his eviction was racially motivated.  He apparently bases this claim on a letter written by a different tenant, Jonathan Hall, which is also attached to the complaint.  In his letter, Mr. Hall claims to have overheard Mr. Galentine and another Wilson Plaza resident speaking about the eviction.  Mr. Hall concluded that these two tenants were prejudiced against African-Americans, noting that "[i]t shocked me to hear that, they appear to have racial prejudice.  Specifically one of the men commented on Mr. Elliott's way of speaking.  Then the other replied, 'That's they (sic) way they talk.' ('They' referred to black people')."  Mr. Hall concluded his letter by stating "I feel certain that Mr. Elliott is being racially discriminated against because he's black."  As relief, Mr. Elliott seeks an apology, the right to return to his former apartment, and monetary damages.

III.

The motion to dismiss has been filed by Plaza Properties and all of its employees who have been named individually as defendants.  The Court will refer to them collectively as "Plaza Properties."  Mr. Galentine has also been named as a defendant and has filed an answer denying that he had any involvement in Mr. Elliott's eviction beyond complaining about Mr. Elliott to Plaza Properties' management.

In the motion to dismiss, Plaza Properties argues, briefly, that the complaint does not state a claim against Mr. Galentine under the Fair Housing Act or any other federal

statute.  That being so, Plaza Properties contends that there is no basis for the Court's

exercise of jurisdiction against it or its employees.  To the extent that Mr. Elliott's

complaint could be construed as one for "wrongful eviction," Plaza Properties suggests

that any such action would have to be filed in a state court of general jurisdiction and

not a federal court.  Because the jurisdictional arguments made by Plaza Properties all

appear to be premised on the contention that the complaint states no federally-based

cause of action against any of the named defendants, the Court will analyze the motion

under Fed.R.Civ.P. 12(b)(6).

This Court has stated the standard of review applicable to motions to dismiss for

failure to state a claim in the following way:

> A claim survives a motion to dismiss pursuant to Federal Rule of Civil
> Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as
> true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v.
> Iqbal, _ U.S. _, _, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting
> Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007)). The plausibility standard is not akin to a 'probability
> requirement,' but it asks for more than a sheer possibility that a defendant
> has acted unlawfully." Id. A complaint's "[f]actual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true." Twombly,
> 550 U.S. at 555-56 (internal citations omitted).
>
> A court also must "construe the complaint in the light most favorable to the
> plaintiff." Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002) (citing
> Tucker v. Ohio Dep't of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir.
> 1998)). In doing so, however, a plaintiff must provide "more than labels
> and conclusions, and a formulaic recitation of the elements of a cause will
> not do." Twombly, 550 U.S. at 555; see also Iqbal, 129 S.Ct. at 1949
> ("Threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice."); Ass'n of Cleveland Fire
> Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The
> Court must read Twombly in conjunction with Federal Rule of Procedure
> 8(a)(2), which requires only a "short and plain statement of the claim
> showing that the pleader is entitled to relief." Gunaskera v. Irwin, 551 F.3d

461, 466 (6th Cir. 2009). "[A] naked assertion ... gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility...." Twombly, 550 U.S. at 557. Thus, "something beyond a mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." Id. at 557-58 (internal citations omitted).

Risner v. Tri-County Regional Jail, 2010 WL 1253593, *2 (S.D. Ohio March 26, 2010)

In his response to the motion to dismiss, Mr. Elliott argues that there are two separate federal bases for his claims. First, he points out that the apartment he rented is Section 8 Housing and that, under Section 8 regulations, "the owner must give the notice that specifies the ground for termination of tenancy." Memorandum in Opposition, Doc. #20, at 1. Second, citing to Ohio Civil Rights Comm'n v. Akron Metropolitan Housing Authority, 119 Ohio St. 3d 77 (2008), a case in which the Ohio Civil Rights Commission filed a complaint against a landlord under one provision of Ohio's civil rights statute, see Ohio Rev. Code §4112.02(H)(4) for discrimination based on racial harassment by another tenant, Mr. Elliott asserts that he can "sustain a claim for discrimination against plaza properties" and "maintain claims for defamation and wrongful eviction in this court." Doc. #20, at 2. In a supplemental response, Mr. Elliott attached a copy of a document that appears to be published by the Office of Housing and Urban Development and which is entitled "Tenancy Addendum." It indicates that it is to be attached to the Tenant Lease, and it contains the language he quoted in his initial response concerning the landlord's obligation to "give the tenant a notice that specifies the grounds for termination of tenancy" at a time "[a]t or before the beginning of a court action to evict the tenant...." Although this document is unauthenticated,

Plaza Properties has raised no objection to the Court's consideration of it.

Federal regulations clearly provide that the Tenancy Addendum is a required attachment to tenant leases executed as part of the Section 8 program. See 24 C.F.R. §982.456. That regulation also provides that "[t]he tenant may exercise any right or remedy against the owner under the lease between the tenant and the owner, including enforcement of the owner's obligations under the tenancy addendum ...." 24 C.F.R. §982.456(b)(2). Further, 24 C.F.R. §982.310 also specifies the grounds available to a Section 8 landlord for eviction and states, in subsection (e)(1)(i), that "[t]he owner must give the tenant a written notice that specifies the grounds for termination of tenancy during the term of the lease. The tenancy does not terminate before the owner has given this notice, and the notice must be given at or before commencement of the eviction action."

Despite the fact that federal law specifies that certain terms be included in leases executed between private landlords who participate in the Section 8 housing program and their tenants, most courts which have considered the issue have concluded that when a Section 8 landlord evicts a tenant, it is not acting as a federal actor, and there is no jurisdiction in the federal courts to review the propriety of the landlord's acts. See, e.g., Morris v. Dehaan, 944 F.2d 905, *4 (6th Cir. 1991) (unpublished), citing Miller v. Hartwood Apartments, Ltd., 689 F.2d 1239 (5th Cir. 1992); see also Visintini v. Hayward, 2009 WL 2413356, *3 (N.D. Cal. August 5, 2009), citing Gallman v. Pierce, 639 F.Supp. 472, 485 (N.D. Cal. 1986); Benford v. Smith, 2005 WL 1325003 (E.D. Tenn. June 3, 2005). The same absence of state action on the part of the private landlord forecloses any claim under 42 U.S.C. §1983. See, e.g., Shell v. Foulkes, 2010

WL 165172 (11th Cir. January 19, 2010), citing Jeffries v. Georgia Residential Fin. Auth., 678 F.2d 919, 924-25 (11th Cir. 1982).  Finally, the Court notes that there was never an eviction action instituted, so that it does not appear that the lease term that notice of the grounds for eviction be given "at or before the beginning of a court action to evict the tenant" was violated here.

This is not to say that these lease terms are purely illusory.  Had there been an eviction action filed, and had Mr. Elliott not been given notice of the grounds for eviction at or before the beginning of the action, he could likely have raised that failure as a defense to eviction.  Cf. Virgin Islands Community Housing Ltd. Partnership v. Rivera, 2008 WL 5411985 (V.I. Super. December 24, 2008); Carter v. Maryland Management Co., 377 Md. 596, 835 A.2d 158 (2003).  However, those proceedings would occur in state, rather than federal, court.  Thus, the allegation concerning Plaza Properties' failure to provide written notice of the grounds for its request that Mr. Elliott vacate his apartment does not provide any basis for relief in this Court.

The other basis upon which Mr. Elliott seeks relief is his claim that his eviction (or the request that he leave) was motivated by race discrimination.   Plaza Properties argues that, according to the complaint itself, the only evidence of racial discrimination comes from Mr. Hall's letter, and it refers exclusively to statements made by persons who were tenants and not employees of Plaza Properties.  Thus, Plaza Properties does not construe the complaint as stating any claim for race discrimination by any of its employees.

Complaints concerning eviction from a rented property on grounds of racial discrimination are actionable under the Fair Housing Act.  See generally Maki v.

Laakko, 88 F.3d 361 (6th Cir. 1996).  A plaintiff can make out a *prima facie* case for discrimination, whether the claim arises under the Act itself, 42 U.S.C. §3601 *et seq.* or under 42 U.S.C. §1981, if the plaintiff can show that he or she was a member of a class against which discrimination is prohibited; that he or she was qualified to rent the property in question; that he or she was rejected (or, in this case, evicted); and that the property remained available for rental thereafter.  Id. at 364.  Of course, the primary issue to be proved (or pleaded sufficiently) in such a case is the existence of an intent to discriminate; "[t]he [Fair Housing Act] extends to any situation where a housing decision is based in whole or in part on racial considerations."  Miller v. Towne Oaks East Apts., 797 F. Supp. 557, 561 (E.D. Tex. 1992).

Here, it would appear that Mr. Elliott has adequately pleaded that he is a member of a protected class and that he was evicted from his apartment, which thereafter remained available to rent to others.  The key question is whether, under the pleading standards cited above, he has alleged more than just a conclusion that Plaza Properties evicted him due to his race.  If not, his complaint fails to state a claim under the Fair Housing Act or other federal statutes banning racial discrimination.

The only specific facts which Mr. Elliott has pleaded relate to the comments made, and attitudes held, by either Mr. Galentine or another Wilson Plaza tenant. These facts, even if accepted as true, do not support a claim against Plaza Properties for race discrimination.  Plaza Properties has no control over the beliefs, attitudes, or statements of its tenants, and Mr. Elliott has not pleaded any facts which would allow the Court to conclude that these tenants were given any responsibility to make residency decisions on behalf of Plaza Properties.

There is some scant authority for the proposition that, under some circumstances, a landlord can be held liable under the Fair Housing Act for acts by persons who are neither agents nor employees of the landlord. See, e.g., Neudecker v. Boisclair Corp., 351 F.3d 361 (8th Cir. 2003). That case, however, involved harassment of a disabled tenant by the children of the resident manager. The Court of Appeals found both that the Fair Housing Act and the Rehabilitation Act, 29 U.S.C. §794, supported a cause of action for disability harassment, and that the landlord could be held liable for the unwelcome harassment that was alleged in that case because the landlord knew about it and failed to take remedial action to eliminate it. Neudecker has apparently not been cited for that proposition anywhere outside the Eighth Circuit, and the Ohio Supreme Court specifically rejected any theory of tenant-on-tenant harassment in the very case cited by Mr. Elliott, Ohio Civ. Rights Comm. v. Akron Metro Hous. Auth., 119 Ohio St.3d 77 (2008), although that decision involved the interpretation of Ohio, rather than federal, law. Nonetheless, even if the actions of other tenants could, in extreme circumstances, support a claim against a landlord for some type of housing discrimination, Mr. Elliott has failed to plead such circumstances here. Certainly, a comment made between tenants outside of Mr. Elliott's presence cannot constitute the type of harassment that is "sufficiently severe or pervasive to deprive [him] of [the] right to enjoy [his] home" as required by this type of theory, and as recognized by Neudecker. See Kreiman v. Crystal Lake Apartments Ltd. Partnership, 2006 WL 1519320, *11 (N.D. Ill. May 31, 2006). Thus, the statement allegedly made by Mr. Galentine cannot form the basis of any discrimination claim against Plaza Properties.

That leaves only the more general issue of whether the complaint, apart from its reference to the comments made by other tenants, states a claim against Plaza Properties for race discrimination. Certainly, that is the conclusion which Mr. Elliott would like the Court to reach, but conclusions without any factual support are now insufficient to satisfy the pleading standards of the Federal Rules of Civil Procedure, as explained in Twombly and Iqbal.

Employment discrimination cases are very similar to Fair Housing Act cases in terms of what must be alleged to state a claim. Cf. Maki v. Laakko, supra. Under Twombly and Iqbal, it is now well-accepted that an employment discrimination plaintiff must, if he or she wishes the case to move beyond the pleadings stage, "allege sufficient material facts to state a plausible claim for relief ...." Kasten v. Ford Motor Co., 2009 WL 3628012, *4 (E.D. Mich. October 30, 2009). In that case, the complaint simply alleged that the plaintiffs were members of protected classes (age, race and gender) and pleaded the conclusion that the defendant used these classifications as reasons for terminating the plaintiffs' employment. The court held that this complaint was "the kind of minimalistic pleading the Supreme Court had in mind when it held that Rule 8 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation,'" id., citing Iqbal, 129 S.Ct. at 1949, and concluded that because the complaint created only the mere possibility, but not the plausibility, that actionable discrimination had occurred, it could not survive a Rule 12(b)(6) motion to dismiss. See also Mitchell v. Project Renewal, 2010 WL 481348, *3 (S.D.N.Y. February 1, 2010) (dismissing race discrimination complaint because plaintiff alleged only her belief that her supervisor denied her a promotion on the basis of her race, and failed "to provide

any basis for her belief"); Hughes v. America's Collectibles Network, 2010 WL 890982 (E.D. Tenn. March 8, 2010); but cf. Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (holding, after Twombly was decided, but prior to the decision in Iqbal, that a discrimination plaintiff need "aver only that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [membership in a protected class]").

Here, it is hard to imagine a more conclusory statement of discrimination than the one contained in Mr. Elliott's complaint.  He has supplied no facts (apart from the Hall letter, which cannot be used as support for any claim against Plaza Properties) which might lend plausibility to his claim that he was evicted due to his race.  To the extent that his complaint does contain facts, it supports just the opposite inference - that he was evicted because Mr. Galentine, and perhaps other tenants, complained about his behavior.  Regardless of the motivations of the people who may have complained about him, if Plaza Properties asked Mr. Elliott to leave in response to complaints from other tenants, its actions were not racially motivated.  Thus, to the extent that the complaint pleads any plausible scenario for Plaza Properties' actions, that scenario does not involve unlawful discrimination.  Consequently, Mr. Elliott's complaint against Plaza Properties and its employees must be dismissed for failure to state a claim.

IV.

Mr. Elliott has filed two other documents which the Clerk has docketed as motions.  Both were filed on January 11, 2010.  One of them (#59) does not ask for any relief, but attaches some documents, most of which are also attachments to other filings.  This document is not a motion and the Clerk will be directed to remove it from

the Court's pending motions list.

The other document, Doc. #58, is apparently a motion to reconsider an order of the Magistrate Judge denying Mr. Elliott's numerous motions for the appointment of counsel. Because the Court has determined that Mr. Elliott has not pleaded any federal claims that have even arguable merit, his request for counsel was properly denied, see Mars v. Hanberry, 752 F.2d 254 (6th Cir. 1985), and the order denying that request is not contrary to law. The motion for reconsideration will be denied on that basis.

## V.

Even though all of the claims against the Plaza Properties defendants are being dismissed, Mr. Elliott's claims against Mr. Galentine remain pending. However, to the extent that they might have been properly within the Court's supplemental jurisdiction under 28 U.S.C. §1367, the dismissal of any federally-based claims would ordinarily counsel in favor of dismissing these claims as well. The Court does not believe that any federal law claims have been pleaded against Mr. Galentine, because he is clearly a private individual and there would appear to be no basis for holding him liable under any federal statute. Mr. Elliott will be given 21 days to advise the Court on what basis, if any, he believes the Court should continue to exercise jurisdiction over the claims against Mr. Galentine. If he fails to do so, the Court will dismiss those claims without prejudice.

## VI.

For the reasons set forth above, plaintiff's motions to recuse (#62) and to reconsider the Magistrate Judge's order (#58) are DENIED. Document #59 is not a motion and the Clerk shall remove it from the Court's pending motions list. The motion

of the Plaza Properties defendants to dismiss (#12) is GRANTED.  All federally-based

claims against those defendants are DISMISSED WITH PREJUDICE for failure to state

a claim on which relief can be granted.  To the extent that the complaint may be

construed as pleading state law claims against those defendants, such claims are

DISMISSED WITHOUT PREJUDICE on jurisdictional grounds.  See 28 U.S.C.

§1367(c)(3).  Finally, Mr. Elliott shall show cause within twenty-one (21) days of this

order why his claims against defendant William Galentine should not be dismissed for

lack of jurisdiction.

**Michael H. Watson, Judge**
**United States District Court**